

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALI GAIAS HANZEL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 03-3367** |
| **U.S. ATTORNEY GENERAL, ET. AL** | **SECTION "A" (6)** |

## REPORT AND RECOMMENDATION

This is a petition for federal habeas corpus relief filed pursuant to 28 U.S.C. § 2241 by a foreign national who is "in custody" pursuant to a deportation order of the United States Immigration and Naturalization Service ("INS"). This matter was referred to the United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations. 28 U.S.C. § 636(b)(1)(B) and (C). Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. For the reasons set forth below, it is recommended that the instant petition be **DENIED IN PART WITH PREJUDICE** and **TRANSFERRED IN PART.**

## I.    <u>BACKGROUND</u>

The petitioner, ALI  GAIAS HANZEL ("Hanzel"), is a  native and citizen of Iraq.[1] He stowed away aboard a vessel owned by Agri Energy Shipping Inc.[2] and attempted to illegally enter the United States at a New Orleans, Louisiana port on January 31, 2001.[3] Because he entered the country as a stowaway, Hanzel's removal from the United States became the responsibility of the carrier.  However, rather than being detained aboard the vessel, Hanzel was immediately taken into the custody of the Department of Homeland Security ("DHS") when he expressed a fear of returning to his native country.[4]  Hanzel applied for political asylum on the basis of having a credible fear that his return to Iraq would result in his imprisonment or death.[5]  The application for asylum was eventually denied by

---

[1]Rec. Doc. No. 1, Petition at p. 2 and 4, hereinafter "Petition".

[2]Agri Energy Shipping, Inc. attempted to intervene in this action but the motion was denied by the undersigned Magistrate Judge on August 24, 2004.  See Fed. Rec. Doc. 21.

[3]Petition at p. 2; Rec. Doc. No. 9, Government's Response ("Response") at p. 1 and Exhibits A and B.

[4]Petition at p. 2; Response at p. 2.

[5]In his 2002 application for asylum, Hanzel asserted that because his family participated in a government uprising against the then-existing  Iraqi government, he had a fear of returning to his country of origin.  He also asserted that, as a Shi'a Muslim, he would be persecuted by the Iraqi government upon his return. See Government Response dated January 22, 2004 (Fed. Rec. Doc. 9) and the administrative documents supplied with that response, specifically the amended application for asylum dated July 12, 2001 and Government Exhibit D, Decision of the Board of Immigration Appeals dated January 18, 2002.

2

an Immigration and Naturalization Service ("INS") Judge on August 28, 2001.[6]  The INS

Judge also denied Hanzel's request that he not be removed from the United States.[7]

After an unsuccessful appeal to the Board of Immigration Appeals, the deportation

order became final on January 18, 2002 with the BIA's denial.[8]  Petitioner was subsequently

denied parole.[9]

Petitioner filed the instant application for federal habeas review, claiming that his

continued detention by the government violated substantive and procedural due process

grounds, citing *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed. 2d 653 (2001).

At that time, petitioner sought only deportation or his release on bond from detention. The

government responded to petitioner's habeas application by arguing that unlike Zadvydas,

petitioner was an alien who had never been admitted to this country and, as such, was not

entitled to *Zadvydas* relief. [10]  Hanzel filed a traverse to the government's response, therein

---

[6]Response at p. 2, Exhibits B and C.

[7]Petition at p. 5; Response at p. 2, Exhibit C.

[8]Response at p. 2, Exhibit D. Hanzel appealed the IJ's decision on the grounds that the Immigration Judge erred in denying petitioner's application for asylum and for withholding of removal pursuant to sections 208(a) and 241 (b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1231 (b)(3), respectively, and for relief pursuant to Article 3 of the Convention Against Torture. See 8 C.F.R. §§ 208.16-18.

[9]Petition at p. 4; Response at p. 2, Exhibit E.

[10]The government's argument in its initial response has since been rejected by the U.S. Supreme Court in *Clark v. Martinez*, 543 U.S. 371, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005).

reasserting his claim that his prolonged detention was unconstitutional but also raising new issues.[11]   Specifically, Hanzel claimed that he was denied due process during his asylum proceedings when he was not allowed to present facts or evidence to the Immigration Judge in support of his application.  Additionally, Hanzel challenged the constitutional validity of his deportation order and argued that he was the victim of "selective prosecution".  In light of the addition of these new claims, the court construed Hanzel's Traverse as an amendment to his habeas petition and requested a response from the government.[12] The Government response, filed on October 8, 2004, argued that petitioner's claims were without merit as his status as a stowaway alien without family or any support system in this country made him ineligible for release.[13]  Despite this contention, the government proposed, for the first time, to parole Hanzel conditioned upon the carrier offering a bond to secure Hanzel's release.

On December 1, 2004, the court appointed the Federal Public Defender to represent Hanzel at a status conference to be held on January 19, 2005 and at an evidentiary hearing to be held on February 17, 2005.  However, on December 2, 2004, the vessel owner/carrier posted a $12,000.00 bond for Hanzel, prompting Hanzel's release from the physical custody

---

[11]See Fed. Rec. Doc. 17.

[12]See Fed. Rec. Doc. 22.

[13]See Fed. Rec. Doc. 23.

of DHS.[14]  The government therefore filed, on December 13, 2004, a motion to dismiss as moot the petition of Ali Gais Hanzel.[15] That motion, along with a motion to change venue filed by Hanzel, was referred to the undersigned Magistrate Judge on May 5, 2005. [16]

### Positions of the Parties

The government argues, in its motion to dismiss, that petitioner's request that he be released from detention by the Department of Homeland Security (DHS) is now moot as Hanzel was released from such detention on December 2, 2004 and is now residing in Atlanta, Georgia.  The government supports its claim with the Declaration of Carl E. Perry, Deputy Chief Counsel of the Immigration and Customs Enforcement (ICE), New Orleans Field Office, which attests to the fact that Hanzel was released on December 2, 2004 after a $12,000.00 bond was posted on his behalf.[17]

Petitioner, through counsel, responds to the motion to dismiss by maintaining that his case is not moot as he still suffers from the collateral consequences of the adverse decisions made by DHS to deport him and to deny him asylum.  Counsel asserts that this court retains

---

[14]See Exhibit A attached to Fed. Red. Doc. 27.

[15]After several extension requests were granted, Hanzel filed a response to the motion to dismiss on April 22, 2005. In the interim, the evidentiary hearing previously set by the court was cancelled. See Fed. Rec. Doc. 33.

[16]See Fed. Rec. Doc. 42.

[17]See Fed. Rec. Doc. 27 and attached Government Exhibit A. As the Order of Supervision indicates, Hanzel is currently under parole supervision through the Atlanta Field Office, Deportation Section of the U.S. Department of Homeland Security.

jurisdiction despite Hanzel's release since "he still has a stake in the outcome of any decision rendered in this matter,"(citing *Lewis v Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990).[18] Counsel further argues that petitioner presents a "serious question as to whether his Fifth Amendment rights were violated when he was denied a full and fair hearing at the removal hearing."[19]

## Analysis

At the outset, the court agrees with Hanzel's counsel that "in custody" jurisdiction is satisfied in this case. Even when a petitioner is released from the physical custody of the DHS, the jurisdictional issue of whether a petitioner is "in custody" for federal *habeas* jurisdictional purposes is determined as of the time he filed his federal *habeas* petition. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998). *Carafas v. LaVallee*, 391 U.S. 234, 237-38, 88 S.Ct. 1556, 1559-60, 20 L.Ed.2d 554 (1968). Once federal habeas jurisdiction has attached, "it is not defeated by the release of the petitioner prior to the completion of proceedings on such application." *Carafas*, 88 S.Ct. at 1559-60. Petitioner was incarcerated, under DHS authority, when this petition was filed and that is sufficient for jurisdiction to attach and to be maintained.[20]

---

[18]See Response to Motion to Dismiss, Fed. Rec. Doc. 41 at p. 1.

[19]See Response to Motion to Dismiss, Fed. Rec. Doc. 41 at p. 3.

[20]Venue also properly lies in the U.S. District Court, Eastern District of Louisiana. Under 28 U.S.C. §2241, a writ of habeas corpus can be sought by a federal prisoner only from a district court with jurisdiction either over the prisoner or his custodian. *United States*

The question thus becomes whether a case-or-controversy, as required under Article III, Section 2, of the Constitution is still present in this case. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, . . . The parties must continue to have a 'personal stake in the outcome of the lawsuit. *Lewis,* 494 U.S. at 477-478, 110 S.Ct. at 1254 (citations omitted).

First addressing petitioner's *Zadvydas*[21] claim, i.e., whether his continued detention pending deportation violates constitutional principles, the court finds that no case-and-controversy exists as to this claim. The standard of continued detention set forth in *Zadvydas* is no longer applicable to Hanzel's claim because he is no longer in the physical custody of DHS and is currently on supervised release. Accordingly, as to this issue, the court finds petitioner's claim to be moot as he has been provided with the relief sought. *See, Francois v. Ashcroft,* 2004 WL 1687803 (E.D. La., July 27, 2004) (*Zadvydas* claim moot when petitioner released under the supervision of DHS), *Alhamdani v. Attorney General of the United States,* 2003 WL 21448784 (N.D. Tex., April 28, 2003)(petition mooted when

---

*v. Gabor,* 905 F.2d 76, 78 (5th Cir. 1990), citing *Blau v. United States,* 566 F.2d 526, 527 (5th Cir. 1978). The record indicates that Hanzel, at the time of the filing of the petition was incarcerated, under DHS authority, at Orleans Parish Prison, within the jurisdiction of this court.

[21]In *Zadvydas,* the court addressed the constitutionality of the detention of a federal immigrant beyond the authorized period of detention as provided by Section 241(a) of the Immigration and Naturalization Act, 8 U.S.C. §11231(a).

7

immigrant detainee was released from I.N.S. custody pending removal from the United States); *Ibrahim v. I.N.S.*, 2003 WL 292172 (N.D. Tex., Feb. 7, 2003)(same); *Camara v. Comfort,* 235 F. Supp. 2d 1174, 1176 (D. Colo. 2002)(where primary injury alleged in *habeas* petition was petitioner's illegal detention, the fact that petitioner's freedom was still restricted by terms of supervised release was insufficient to establish that a "case and controversy" continued to exist); *Holley v. Andraschko*, 2003 WL 22407416 (10th Cir., October 22, 2003)(Since the traditional function of the writ of habeas corpus is to secure release from illegal custody, §2241 petition became moot when petitioner was released).

Counsel for Hanzel argues, however, that petitioner still has standing to bring his *habeas* claims before this court as "there is a possibility he can 'beneficially unravel his untoward immigration status'."[22] Essentially counsel argues that, if the court were to review Hanzel's claims that he was denied a full and fair hearing during both his asylum and removal proceedings, the Department of Homeland Security's decision to deport Hanzel may be altered by a decision of this court. Counsel cites the cases of *Chong v. INS*, 264 F.3d 378 (3rd Cir. 2001), *Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir. 2002) and *Riley v. INS*, 310 F.3d 1253 (10th Cir. 2002) for the proposition that, despite apparent "mootness" due to deportation or release of an immigrant from detention, the fact that an alien's immigration

---

[22]See Fed. Rec. Doc. 41 at p. 2.

status could be altered by court decision is a sufficient "collateral consequence" for the court to retain jurisdiction.[23]

Unfortunately for Hanzel, the court need not and, more importantly, *cannot* review his constitutional challenges to DHS's decision to deny him asylum and to deport him. On May 11, 2005, Congress enacted the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 ("The Act"). "The Act amends the jurisdictional provisions of the Immigration and Nationality Act, altering the way in which noncitizens can seek judicial review of administrative orders of removal. Section 106 of the REAL ID Act has divested federal courts of jurisdiction over §2241 petitions attacking removal orders, effective immediately and retroactively." *Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733 (5th Cir. 2005), *cert. denied*, – S.Ct. –, 2006 WL 37358, 74 USLW 3391 (U.S. Jan. 9, 2006)(No. 05-7335), citing Pub. L. No. 109-13, 119 Stat. 231, 310 and *Enwonwu v. Chertoff*, 376 F.Supp.2d 42, 81-82 (D.Mass.2005).

Section 106 provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, ... a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review* of an order of removal entered or issued under any provision of [the Immigration and Nationality Act] ....

_____

[23]See Fed. Rec. Doc. 41 at p. 2-3.

(emphasis added).

Section 106 took effect upon the enactment of the REAL ID Act and applies "to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment of this division." Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(b). The REAL ID Act thus sets forth a "clear statement of congressional intent to repeal habeas jurisdiction." *Ramirez-Molina v. Ziglar*, — F.3d —, 2006 WL 62862 *2 (5th Cir. Jan. 12, 2006).[24] To further this jurisdictional change, the REAL ID Act requires district courts to transfer any pending habeas cases challenging final orders of removal, deportation, or exclusion to the appropriate court of appeals. Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(c); *Jama v. Gonzales*, — F.3d —, 2005 WL 3047263 (5th Cir, Nov. 15, 2005). The appropriate court of appeals is "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings". 8 U.S.C. § 1252(b)(2) (1999 & Supp. 2005). In addition, Congress provided that "[t]he court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review ...." *Id.*

In Hanzel's case, the immigration judge who completed his administrative proceedings, denying the request for asylum and for withholding of removal, held the

---

[24]Section 106(a) of the Act does not, however, preclude habeas review of challenges to detention that are independent of challenges to removal orders. *Baez v. BICE*, – F.3d –, 2005 WL 2436835 (5th Cir., Oct. 4, 2005), citing H.R. Rep. No. 109-72 at 300 (2005). Thus, Hanzel's *Zadvydas* claim, previously addressed, is properly before this court.

immigration proceedings in New Orleans, Louisiana, within the jurisdictional confines of the U.S. Fifth Circuit Court of Appeals.[25]  Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the Government's motion to dismiss as moot (Fed. Rec. Doc. 27) be **GRANTED IN PART** as to the issue of indefinite detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, as a case and controversy no longer exists with respect to that claim for relief;

**IT IS FURTHER RECOMMENDED**  that the Government's motion to dismiss (Fed. Rec. Doc. 27) be **DENIED IN PART** as to the remainder of Hanzel's claims,  i.e., 1) that he was denied due process during his asylum proceedings when he was not allowed to present facts or evidence in support of his application to the Immigration Judge, and, 2) that the order of deportation should be invalidated due to unconstitutional "selective prosecution".

**IT IS FURTHER RECOMMENDED** that Ali Gaias Hanzel's petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2241 be **DENIED** as to the issue of indefinite detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 and that the following issues be **TRANSFERRED** to the U.S. Court of Appeals for lack of jurisdiction in this court: 1) that Hanzel was denied due process during his asylum proceedings when he was not allowed to present facts or evidence in support of his application to the Immigration Judge,

---

[25]See Rec. Doc. 9, Order of the Immigration Judge dated August 28, 2001, attached as an exhibit to the Government's response.

and, 2) that Hanzel's order of deportation should be invalidated due to unconstitutional "selective prosecution".

**IT IS FURTHER ORDERED** that Hanzel's motion for change of venue (Fed. Rec. Doc. 28), which specifically requests a transfer of venue to the U.S. District Court for the Southern District of Georgia, Augusta Division, be DENIED, as the U.S. Fifth Circuit Court of Appeals has exclusive jurisdiction over Hanzel's claims that challenge the constitutional validity of his order of deportation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 31st day of January, 2006.

LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE